| 34 | 211 |
| s50 | 572 |

JAMES V. LAWRENCE, as Sole Surviving Partner of the Firm of LAWRENCE BROTHERS, Appellant, *v.* JOHN DAWSON and WILLIAM ARCHER, Respondents, Impleaded with the BOARD OF EDUCATION OF THE CITY OF MOUNT VERNON and Others.

*Mechanic's lien — a payment by the principal contractor to a sub-contractor before it became due.*

A materialman, being about to file a lien against a sub-contractor, was assured by the principal contractors that the contract between them and the sub-contractor contained a provision for the retention of fifteen per cent of the amount due until the work was completed and "that said moneys had been and would be retained and said provisions and terms of said contract as to payment kept and observed by" them. In reliance upon these representations the materialman refrained from filing his lien for a period of more than six weeks, during which time the contractors, in violation of their representation, paid the fifteen per cent to the sub-contractor in advance of the terms of their contract with him. The materialman then filed his lien, and in an action to enforce it, it was

*Held,* that under the provisions of section 7 of chapter 418 of the Laws of 1897 (the Lien Law), such payment, having been made prior to the time when it became due, for the purpose of avoiding the provisions of that act, was of no effect as against the lienor, and in the enforcement of the lien was not to be considered in determining the amount due from the contractors to the sub-contractor.

APPEAL by the plaintiff, James V. Lawrence, as sole surviving partner of the firm of Lawrence Brothers, from so much of a judgment of the Supreme Court, entered in the office of the clerk of the county of Westchester on the 25th day of June, 1898, upon the decision of the court rendered after a trial at the Westchester Special Term, as adjudges that the complaint be dismissed as to the defendants John Dawson and William Archer, and that the mechanic's lien filed herein by the plaintiff is not a valid lien upon the moneys deposited with the defendant, the Board of Education of the City of Mount Vernon, by the defendants Dawson and Archer, to discharge said lien and now held to await the result of the action.

*Ralph Earl Prime, Jr.,* for the appellant.

*Frank M. Tichenor,* for the respondents.

WILLARD BARTLETT, J.:

This is a mechanic's lien suit in which we are concerned only with a controversy between James V. Lawrence, as surviving partner of the firm of Lawrence Bros. on the one hand, and John Dawson and William Archer, composing the firm of Dawson & Archer, on the other. The controversy grows out of the construction of a schoolhouse in the city of Mount Vernon. Dawson & Archer were the contractors with the municipality for the erection of the building. They entered into a sub-contract with one John Burden under which he agreed to furnish all the materials required for the carpenter work, and to perform the carpenter work required by the terms of the principal contract. The plaintiff sold and furnished building materials to Burden in such quantity that on September 10, 1897, about $2,500 or $2,700 was due to him for such materials. In order to enforce his claim for this amount, the plaintiff at that time contemplated filing a mechanic's lien against the school property, but at an interview between his agent and Burden and the defendant Dawson, Burden and Dawson stated to the plaintiff's agent, as was the fact, that the terms of Burden's sub-contract provided for and required the retention by Dawson & Archer of fifteen per cent of the value of all work done under said sub-contract until final payment and completion, "and that said moneys had been and would be retained and said provisions and terms of said contract as to payment kept and observed by the defendants Dawson & Archer."

Relying upon these representations, the plaintiff refrained for the time being from filing any lien. On the very day of the interview, however, Dawson & Archer paid out $3,000 to materialmen (Hartmann Bros.), between whom and Dawson & Archer there appears to have been no relation except such as grew out of the fact that Hartmann Bros. had supplied material to Burden which he put into the school building. Dawson & Archer also subsequently paid to Burden $2,274.30 in advance of the terms of their sub-contract with him; that amount, representing the fifteen per cent already mentioned, not being payable under the terms of the contract before January 1, 1898. After these payments had been made, and on October 28, 1897, when a balance of $1,825.92 remained due from Burden to the plaintiff, the plaintiff duly filed his lien.

In the statement of the facts thus far made, nothing has been

included which was not found by the learned trial judge; but, notwithstanding the representations which have been recited, and notwithstanding the plaintiff's reliance thereon which led him to withhold the filing of his lien for more than six weeks, the learned trial judge holds that the facts and circumstances are not sufficient to justify a finding that the advance payment of the fifteen per cent to the sub-contractor was made for the purpose of avoiding the provisions of the Mechanics' Lien Law, and he does find in fact that such payment was not so made, but was made in good faith.

I think this finding is clearly against the weight of evidence, and should not be sustained.

The existing Lien Law contains the following provision : " Any payment by the owner to a contractor upon a contract for the improvement of real property, made prior to the time when, by the terms of the contract, such payment becomes due, for the purpose of avoiding the provisions of this article, shall be of no effect as against the lien of a sub-contractor, laborer or material man under such contract, created before such payment actually becomes due." (Laws of 1897, chap. 418, § 7.)

The opinion and decision in the court below are evidently based upon the assumption that this provision applies as well to any payment by a contractor to a sub-contractor as to any payment by the owner to the principal contractor. Upon the present appeal, however, the learned counsel for the respondents denies that this is the correct construction of the provision which has been quoted, and declares that there is no prohibition in the Mechanics' Lien Law against a contractor paying his sub-contractor in advance of the terms prescribed by the contract between them..

The provision in question is contained in section 7 of the statute which is included in article 1, and the 22d section declares that that article is to be construed liberally to secure the beneficial interests and purposes thereof.

In view of the construction which we gave to the provision of the former Mechanics' Lien Law (Laws of 1885, chap. 342), which was under consideration in *Smack* v. *Cathedral of the Incarnation* (31 App. Div. 559), I am of the opinion that section 7 of the present Lien Law should be held to embrace payments by the principal contractor as well as payments by the owner. It is to be noted that the

contract in the present case between Dawson & Archer and Burden, itself refers to Dawson & Archer as the owner, for it provides that should the contractor, meaning Burden, at any time during the progress of the work refuse or neglect to supply a sufficiency of materials or workmen, the owner (which must mean Dawson & Archer, and cannot possibly mean anybody else in this sub-contract between these parties) shall have the power to finish the work and deduct the expense from the amount of the contract. For the purposes of this litigation, therefore, the parties have themselves voluntarily assumed the characters of owner and contractor respectively, and it is certainly not a forced construction of this provision of the Lien Law, so far as they are concerned, to apply it to the advance payments which were made by Dawson & Archer to Burden.

The circumstances of the interview of September 10, 1897, must be considered somewhat in detail in order to throw light on the purpose which brought about the advance payment. There were present at that conversation Percy Young, the agent of the plaintiff, John Dawson, one of the contractors, and John Burden, the sub-contractor. Mr. Young was desirous to procure a payment on account of the plaintiff's claim of $2,500 or $2,700, but Mr. Dawson was unwilling then to pay more than $1,000 cash, whereupon, says Mr. Young in his testimony: "I asked him if the terms of the contract with Mr. Burden were the same in regard to the payments as the terms of the contract with the board of education, and he said they were, and he stated that the 15 per cent. being held back would preclude his paying us the full amount in cash." Burden, when examined in reference to the same conversation, denied that anything was said about the terms either of his contract with Dawson & Archer or their contract with the board of education, or that anything was said about fifteen per cent being retained under their contract. He did testify, however, that when Mr. Young expressed the opinion that the plaintiff ought to get more money, he, Burden, told Mr. Young that he had no claim on Dawson & Archer for more cash at that time. Dawson, who was also called as a witness, corroborated Burden in the statement that nothing was said about the contracts or retaining fifteen per cent.

Now it is to be noted that the learned trial judge did not believe what Burden and Dawson said on this subject; for he found, in

the most distinct manner, that the representations alleged in the complaint in regard to the retention of the fifteen per cent were made by Burden and Dawson to the plaintiff's agent on the 10th day of September, 1897. The sole reason, therefore, which the record discloses in support of his conclusion that the advance payment was not made in order to evade the provisions of the Mechanics' Lien Law must be because Dawson swore, in answer to a leading question, that he did not make the payments with the intent of evading those provisions. It does not seem to me that this declaration of intent ought to be allowed to overcome the plain inference to the contrary which is required by the facts actually found at Special Term. It is impossible to perceive what was the purpose of assuring the plaintiff's agent that the fifteen per cent would be retained, unless it was to prevent the plaintiff from then filing a lien which would have reached the $3,000 that they paid out to Hartmann Bros. on the same day; and no reason whatever is assigned for making that prompt payment to Hartmann Bros., instead of paying the claim of the plaintiff. The payment thereafter to Burden of the fifteen per cent and a little more, left little or nothing in the hands of Dawson & Archer to which the plaintiff's lien could attach, if that advance payment was effective as against the plaintiff.; and no reason is suggested why it was made, unless it be the statement of Burden, also in response to a leading question, that he could not have gone on and completed the contract unless he had received the payments which he did receive from Dawson & Archer. The character of this statement may be appreciated when we remember that the witness did not complete the contract at all, and that Dawson & Archer are before the court claiming a credit of upwards of $800 for having completed it themselves. The accuracy of Burden's account of the transactions must also be considered in the light of his own statement to Young, on September 10, 1898, that he had no claim upon Dawson & Archer for more cash than $1,000 at that time, when it turns out that they thereafter paid a $3,000 debt of his to Hartmann Bros. by a check dated the same day.

The case is quite different from *Weisemair* v. *City of Buffalo* (57 Hun, 48) where it was held that a similar provision for the retention by the city of twenty per cent of the amount due on

the contract did not inure to the benefit of the contractor or his employees, but was inserted for the sole benefit of the city, which alone could claim any rights under it. Here, however, the provision for the retention of the percentage was in the agreement also between the contractor and the sub-contractor, and it would be manifestly unjust to hold that it availed nothing to a materialman having a claim against the sub-contractor for materials furnished, when he had been induced by both parties to the sub-contract to postpone the enforcement of that claim by representations that such percentage would be retained.

The respondents also cite *McMillan* v. *Seneca Lake Grape & Wine Co.* (5 Hun, 12) and *Cheney* v. *Troy Hospital Association* (65 N. Y. 282) in support of the proposition that where the contract has been abandoned and the contractor (or in a case like the present, the sub-contractor) has been fully paid for all work done prior to the time the lien is filed, the lien must fail because nothing can thereafter be due the contractor. This rule, however, has no application to a case in which the full payment can be made out only by including in the computation sums not due when paid, which have been paid in advance to evade the provisions of the Mechanics' Lien Law.

There is no question of forfeiture in the case. None was raised in the pleadings, and no attempt to enforce any forfeiture was made by the contractors who elected to go on and finish the uncompleted work of the sub-contractor at his expense. It is not necessary to pass now upon the points raised by the appellant as to the payment of the $3,000 to Hartmann Bros. being ineffectual because not shown to have been made with Burden's authority. The proof in regard to this payment evidently does not disclose all the facts, and may be supplemented on the new trial which must be ordered on account of the erroneous conclusion reached on the other branch of the case.

All concurred; CULLEN, J., on grounds stated in memorandum; HATCH, J., absent.

CULLEN, J.:

Without expressing any opinion on the question of fact whether the payments were made by defendants Dawson and Archer with

intent to avoid and defeat the lien of the plaintiff, I concur in reversal on the ground that there is nothing in the evidence to justify charging the $3,000 paid to Hartmann Bros. as a payment on account of the defendant Burden.

Judgment, so far as appealed from, reversed and new trial granted, costs to abide the final award of costs.