WILLIAM J. DEMPSEY, Plaintiff, *v.* MOUNT SINAI HOSPITAL and Others, Defendants, Impleaded with THOMPSON-STARRETT COMPANY, Appellant, and WILLIAM NUTLEY and Others, Respondents.

First Department, February 7, 1919.

**Mechanics' liens — lien for materials and labor furnished to sub-contractor — abandonment of work by subcontractor — when liens not valid as against contractor — statute construed — liens against contractors on private and public improvements.**

Where a building contractor sublet the excavation work, persons who furnished labor and material to the subcontractor and filed liens at a time when no amount was due or owing by the general contractor to the subcontractor because by the subcontract the final payment was not to become due and payable until forty days after the entire completion of the work by the subcontractor, are not entitled to assert their liens against the general contractor where the subcontractor abandoned the work and went into bankruptcy and the general contractor, in order to avoid liability to the owners, finished the work of the subcontractor at a cost in excess of the balances unpaid on the subcontract.

*It seems*, that had there been a surplus of the amount repaid on the subcontract after completion of the work by the contractor acting under the contract, said liens would have attached thereto, but otherwise there was no fund to which they could attach.

It is immaterial that the amounts of said liens had been earned by the subcontractor at the time the liens were filed if in fact the amount earned was not due or owing and never thereafter became due or owing from the general contractor to the subcontractor.

Section 4 of the Lien Law, as revised by chapter 418 of the Laws of 1897, which provided that a lien for labor and materials furnished to a contractor or subcontractor for an improvement shall not be for a sum greater " than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon," does not intend to create a valid lien where the amount was only " earned and unpaid " but has not become due. The Legislature by said amendment did not attempt to create a lien as against a contractor or subcontractor which would not be valid as against the owner. The word " earned " as used in said statute should be construed to mean moneys completely earned and due, or which subsequently become due.

There is no difference between the rights of lienors as against contractors on private contracts and contracts for public improvements, and the lienors have no greater rights in the one case than in the other.

DOWLING and MERRELL, JJ., dissented, with opinion.

APPEAL by the defendant, Thompson-Starrett Company, from so much of a judgment of the Supreme Court in favor of respondents, entered in the office of the clerk of the county of New York on the 13th day of July, 1918, upon the decision of the court after a trial at the New York Special Term as decrees the foreclosure of the mechanics' liens filed by the respondents herein.

*Frederick Hulse* of counsel [*Eidlitz & Hulse,* attorneys], for the appellant.

*Harry Lesser* of counsel [*Moses Cohen* and *Patrick J. McDonald* with him on the brief; *Wesselman & Kraus,* attorneys for Nutley; *Zalkin & Cohen,* attorneys for Dittmar Powder Works, Inc., and *Patrick J. McDonald,* attorney for Torpey], for the respondents.

LAUGHLIN, J.:

On the 2d of June, 1915, the appellant entered into a contract with the Mount Sinai Hospital for the excavation of the premises described in the complaint in the borough of Manhattan, New York, and the erection thereon of certain buildings, and thereafter the appellant sublet the excavation work to the defendant the F. H. Chapman Contracting Company. The respondent company Dittmar Powder Works, Inc., furnished explosives to the subcontractor for use and which were used in making the excavation, and the other respondents performed labor for the subcontractor in making the excavation and they all duly filed liens therefor. The uncontroverted evidence shows that at the time these liens were filed, no amount was due or owing by the general contractor to the subcontractor, but the subcontractor had at those times performed work and labor and furnished material amounting in value to more than the amount of the liens filed, for which it had not been paid but no part thereof became *due and payable* owing to the usual provision of the contract by which only eighty-five per cent of the value of the work performed was due and payable at the contract rates, as the work progressed, and by which the remaining fifteen per cent was not to become due and payable until forty days after the entire completion of the work by the subcontractor. The lien

of the respondent Nutley was filed on the 13th of September, 1916, and that of the respondent Torpey on the fourteenth of the same month and of the other respondent on the following day. The subcontractor abandoned the work on the 16th of September, 1916, and was adjudicated a bankrupt on the twenty-third of the same month. At the time the subcontractor abandoned the work, it had been paid the sum of $59,557.03, leaving a balance on the contract price of the work of $4,319.67, which was considerably less than the fifteen per cent which the appellant was authorized to reserve under the contract. Owing to the abandonment of the work by the subcontractor, the appellant was obliged, at the risk of liability to the owner for a breach of its contract, to proceed and finish the work of the subcontractor, which it did at a cost of considerably more than the balance unpaid on the contract. Of course if there had been a surplus of the amount repaid on the subcontract after completion of the work by the contractor acting under the contract, the liens would have attached thereto but otherwise there was no fund to which they could attach. (*Van Clief* v. *Van Vechten,* 130 N. Y. 571; *Brainard* v. *County of Kings,* 155 id. 538; *Anisansel* v. *Coggeshall,* 83 App. Div. 491; *Fraenkel* v. *Friedmann,* 199 N. Y. 351, 356; *Herrmann & Grace* v. *Hillman,* 203 id. 435; *American Radiator Co.* v. *City of New York,* 223 id. 193; *White* v. *Livingston,* 69 App. Div. 361; affd., 174 N. Y. 538; *Rodbourn* v. *S. L. Grape & Wine Co.,* 67 id. 215; *Graf* v. *Cunningham,* 109 id. 369; *Murphy* v. *City of Watertown,* 112 App. Div. 670; *Upton Co.* v. *Flynn,* 169 id. 79; affd., 218 N. Y. 674; *Martin* v. *Flahive,* 112 App. Div. 347.) It is uncontroverted not only that no amount was *due or owing* to the subcontractor at the time the liens were filed, but that no amount thereafter became due or owing from the appellant to the subcontractor under the contract.

The appellant's contention is that in these circumstances there was no fund to which the liens of the respondents ever attached, and the respondents contend that the amounts of their respective liens had been *earned* by the subcontractor at the time the liens were filed, and that upon the work being performed by the appellant the amounts *earned* at the time the liens were filed became due and payable from the owner to the general contractor, and that their liens attached thereto.

They concede that the liability of the owners to lienors is limited to the contract price of the work and it is so expressly provided in section 4 of the Lien Law (Consol. Laws, chap. 33 [Laws of 1909, chap. 38], as amd. by Laws of 1916, chap. 507). But they claim that by virtue of a sentence inserted in section 4 of the Lien Law, as revised by chapter 418 of the Laws of 1897 (Gen. Laws, chap. 49), the Legislature intended to give to a person performing labor for or furnishing materials to a contractor or subcontractor for an improvement, other than a public improvement, a lien for the amount *earned and unpaid* at the time of filing the notice of lien and for any sum subsequently earned under the contract without regard to whether or not it was *due* or ever became due or payable to the contractor or subcontractor for whom the labor was performed or to whom the materials were furnished. That sentence is as follows: " If labor is performed for, or materials furnished to, a contractor or sub-contractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon." That provision, first enacted some twenty-two years ago, has been continued in the Lien Law ever since. The decision from which the appeal is taken is the first so construing these provisions so far as the reports show. It is conceded that if this were *a public improvement* the lienors would have no claim and it has been so held in cases arising under the Lien Law since those provisions were inserted (*Wright* v. *Schoharie Valley R. Co., No. 11,* 116 App. Div. 542; affd., 191 N. Y. 549; *Herrmann & Grace* v. *Hillman,* 203 id. 435; *Lawrence* v. *Dawson,* 34 App. Div. 211; 50 id. 570; affd., 167 N. Y. 609. See, also, *American Radiator Co.* v. *City of New York,* 223 id. 193); but the phraseology of section 5 of the Lien Law, which relates to public improvements, differs from the phraseology quoted from section 4 in that it is declared that the lienors shall have a lien " to the extent of the amount due or to become due " on the contract. (See, also, § 5, added by Laws of 1911, chap. 873, as amd. by Laws of 1916, chap. 507.) If the sentence herein quoted had been a revision of statutory provisions relating to the subject and the phraseology had been changed

from *due* to *earned,* there would be force in the contention made by counsel for the respondents; but inasmuch as the sentence was a *new enactment* it does not necessarily follow that by the adoption of this phraseology specifying the amount earned and unpaid, instead of the amount due and unpaid, there was any legislative intent to differentiate between the rights of lienors under *private* contracts and such rights under contracts for *public improvements.* The Lien Law of 1897 was drafted and presented to the Legislature by the Commissioners of Statutory Revision, and the provisions thereof, so far as here material, were enacted as so recommended without change. (Assembly Documents, 1897, vol. 22, p. 379 *et seq.*) The report of the Commissioners and their note to section 4 show that there was no intent to change the then existing law on the point now under consideration, and, therefore, no intent to change the former law is to be imputed to the Legislature in thus enacting the Lien Law as reported by the revisers and as the law had been well settled prior to that time to the effect that contractors had the same right as owners with respect to the limitation of their liability for work performed under subcontracts (*Lumbard* v. *Syracuse, B. & N. Y. R. R. Co.,* 55 N. Y. 491; *Crane* v. *Genin,* 60 id. 127; *French* v. *Bauer,* 134 id. 548) I am of opinion that the legislative intent would have been made more clear had it been intended to make such a radical change in the law as is contended for by the counsel for the respondents, by which a contractor would be put in the dilemma of being obliged to abandon his contract and subject himself to liability to the owner for a breach thereof, in which case it is clear the lien could not attach in any event unless there should be a surplus on completion by the owner, or to proceed and complete the unfinished contract of a subcontractor at the risk of *completing* the earning of a fund for the lienors, although such completion might cost him more than the balance unpaid on the contract. The first express legislative provision limiting the liability of the owner to the lienor to the amount he agreed to pay under his contract was in section 1 of chapter 342 of the Laws of 1885, but long before that the courts had so construed the statutes relating to mechanics' liens and had also construed them as extending

the same immunity to the general contractor. (*Carman* v. *McIncrow*, 13 N. Y. 70; *Lumbard* v. *Syracuse, B. & N. Y. R. R. Co.*, *supra; Crane* v. *Genin, supra.*) That having been declared by the courts to be the true construction of the former Lien Laws not containing any express provisions on the subject, its enactment in statutory form constituted merely a legislative adoption of what had been declared to be the law, and such, I think, was the legislative intent in incorporating in the revision of 1897, for the first time, the statutory provisions expressly referring to liens for labor performed for and materials furnished to contractors and subcontractors. The courts attached no importance to the incorporation of the provision in the statute in 1885 in accordance with the construction theretofore given to the lien laws or to the fact that the limitation of liability in the statute was confined to the *owner*, for they continued ever since to give the same immunity of liability to contractors as to owners. (*French* v. *Bauer, supra; Smack* v. *Cathedral of the Incarnation*, 31 App. Div. 559; *Rukeyser* v. *Fountain & Choate, Inc.*, 185 id. 263.) It is perfectly clear that the liens to which the statute relates are liens against the real property, and since by the final sentence of the section such liens could not be valid as against the owner unless the money not only was earned but became due and payable by the owner — there is, I think, no ground for contending that the Legislature was attempting to create a lien as against a contractor or subcontractor, which would not be valid as against the owner, for the only method of enforcing the lien was by a sale of the premises which would affect the owner's right. It may be that it would be competent for the Legislature so to provide on the theory that the general contractor might avoid the risk by not subletting any part of the work; but I think it would be unreasonable to impute to the Legislature an intent to attach such an onerous provision to the right of a contractor to sublet work. I am of opinion, therefore, that the word " earned " as used in the sentence quoted should be construed as meaning moneys *completely earned* which are due or which subsequently become due to the contractor or subcontractor for whom the labor is performed, or to whom the material is furnished. There is no reason for differentiating between the rights of lienors as against contractors on private

contracts and contracts for public improvements and I am of opinion that the Legislature did not intend to give the lienors greater rights in the one case than in the other.

It follows that the findings of fact and conclusions of law inconsistent with these views should be reversed and appropriate findings and legal conclusions in accordance herewith made and the judgment in so far as appealed from reversed, with costs, and the liens of the respondents dismissed, with costs.

CLARKE, P. J. and SMITH, J., concurred; DOWLING and MERRELL, JJ., dissented.

DOWLING, J. (dissenting):

I believe that the respondents have brought themselves within the protection of the statute. The fund upon which they seek to impress their lien is " the sum earned and unpaid on the contract at the time of filing the notice of lien." (Lien Law [Consol. Laws, chap. 33; Laws of 1909, chap. 38], § 4, as amd. by Laws of 1916, chap. 507.) While it may be difficult to find any equitable basis on which the contractor or subcontractor should be subjected to a greater risk or liability than an owner, yet the fact remains that the Legislature has chosen to differentiate between them in what seems to me clear and unmistakable language. Section 2 of the Lien Law (as amd. by Laws of 1916, chap. 507) defines an owner and as well a contractor and a subcontractor, and the terms are not interchangeable. The Legislature must be credited with as full a knowledge of their difference in meaning as the courts possess, and must be deemed to have distinguished them accurately and knowingly.

I favor the affirmance of the judgment appealed from, with costs.

MERRELL, J., concurred.

Judgment in so far as appealed from reversed, with costs, and liens of the respondents dismissed, with costs. Order to be settled on notice.