[698 NYS2d 237]

BLANDFORD LAND CLEARING CORP. et al., Appellants, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Respondent.

First Department, November 30, 1999

## APPEARANCES OF COUNSEL

*Donald J. Carbone* of counsel (*Alan Winkler* and *Justine Clare Moran* on the brief; *Goetz Fitzpatrick Most & Bruckman, L. L. P.,* attorneys), for appellants.

*Daniel E. Katz* of counsel (*David M. Grill* on the brief; *Bauman Katz & Grill, L. L. P.,* attorneys), for respondent.

*Denis B. Frind* of counsel (*David R. Hendrick* on the brief; *Altieri, Kushner, Miuccio & Frind, P. C.,* and *Hendrick, Phillips, Schemm & Salzman,* attorneys), for Subcontractors Trade Association, Inc., and others, *amici curie.*

## OPINION OF THE COURT

RUBIN, J.

In this action involving the application of the Lien Law, defendant insurance company contends that it has no obligation to plaintiff subcontractors under its payment bond as a consequence of the default of the owner. It argues that the general contractor on the project is merely the agent of the owner for the purpose of paying the subcontractors for labor and materi-

als and is otherwise under no duty to satisfy the obligation of the owner, the disclosed principal of the contractor, to pay the subcontractors. The insurer concludes that because its liability, as surety, is coextensive with that of its principal, the general contractor, it has no liability under the bond. Based upon an analysis of the various contracts as well as considerations of public policy, this Court concludes that the insurer is liable to the subcontractors under its payment bond.

In September 1995, F.C. Bruckner Associates, L.P. entered into an agreement with York Hunter of New York, Inc. for the construction of a shopping center in Bronx, New York. Plaintiffs Blandford Land Clearing Corp., Dayton Metal Products, Inc. and United Airconditioning, Inc. entered into contracts with York Hunter to perform various aspects of the work. These subcontracts are identical in regard to all matters relevant to this appeal.

The prime contract between F.C. Bruckner, as owner, and York Hunter, as general contractor, requires Bruckner's approval prior to the hiring of subcontractors by York Hunter and subjects the subcontracts to the general conditions of the prime contract. Specifically, the "General Conditions for Contracts of Construction for The Shops at Bruckner Plaza" provides:

"1.2 Limitation of Claims

"Subject to the provision of the New York Lien Law:

"1.2.1 The Subcontractors shall not have any claim or cause of action against the Project [or] the Owner * * * except for payment of the contract sum due the Trade Contractors if not paid to Contractor. For purposes of payment only, Contractor is acting as agent of Owner."

The subcontract with each "Subcontractor" or "Trade Contractor" (the terms are defined to be synonymous) designates Bruckner as the owner and York Hunter as "construction manager" and provides, in section 4.03: "For purposes of payment of the Contract Price York Hunter is acting as Agent of Owner. Payment shall be paid in accordance with the Terms and Conditions."

The Terms and Conditions state, in section 5.06: "For purposes of payment York Hunter is acting as Agent of Owner and a condition precedent to payment by York Hunter to Trade Contractor is the receipt of funds by York Hunter from Owner designated for payment to Trade Contractor. Trade Contractor acknowledges it is relying solely on the credit of Owner and

not the credit of York Hunter for payment for Work performed by Trade Contractor."

Plaintiffs completed both the work specified in their respective contracts and certain extra work, for which they allege they remain partially uncompensated in an amount totaling $552,359.82. Plaintiffs therefore commenced this action against defendant National Union Fire Insurance Company on the payment bond it issued to York Hunter pursuant to the terms of York Hunter's contract with the owner.

Defendant insurer moved for summary judgment dismissing the complaint on the ground stated: that its obligation under the payment bond is only as broad as the contractor's, and the contractor is under no obligation to make payment to the subcontractors for amounts payable by F.C. Bruckner, a disclosed principal. Plaintiffs cross-moved for summary judgment, arguing that the "agent for payment" provision is merely a thinly disguised pay-when-paid provision that the Court of Appeals held to be void as against public policy in *West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co.* (87 NY2d 148).

By order entered May 29, 1998, Supreme Court granted the motion to dismiss the complaint and denied plaintiffs' motion for summary judgment. Plaintiffs sought renewal (denominated a motion to renew and reargue), submitting affidavits showing that the owner had not approved the extra work they had been directed to perform by York Hunter. Thus, they argued, the contractor was not an "agent for payment," at least with respect to that work. Further, they asserted, a reading of the entire contract established that the nature of York Hunter's relationship to the owner was not merely as agent for payment but as general contractor. By order entered on or about December 14, 1998, Supreme Court denied the motion, which it deemed to be for reargument only, on the ground that the evidence was previously known to plaintiffs and, in any event, did not warrant the court's reconsideration.

It is notable that the subcontracts entered into by plaintiffs were all signed within a month of the Court of Appeals decision in *West-Fair Elec.* (*supra*), in which it answered one of two questions certified to it by the Second Circuit Court of Appeals (*West-Fair Elec. Contrs.v Aetna Cas. & Sur. Co.*, 49 F3d 48). Answering the first question, the Court held that "a pay-when-paid provision which forces the subcontractor to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as contrary to public policy set forth in the Lien Law § 34" (87 NY2d, *supra*, at 158). The Court

reasoned that because mechanic's liens may not be enforced until a debt becomes due and payable, the subcontractor has effectively waived its right to enforce such lien by accepting a condition precedent to payment that, due to the owner's insolvency, will never arise (*supra,* at 158, citing *Matter of Schiavone Constr. Co. [Fischer & Porter Co.],* 181 AD2d 580). As the Court stated: "Consequently, the pay-when-paid provision here extinguishes plaintiff subcontractor's ability to enforce a lien against the owner. The pay-when-paid provision creates this result by preventing the subcontractor from establishing the existence of a present amount, due and unpaid, arising from the subcontractor's performance and owed by the general contractor. The establishment of such a debt is a necessary element of the subcontractor's cause of action to enforce its lien against the owner" (*supra,* at 159).

The Court did not answer the second certified question, stating, "Having concluded that the general contractor's liability to plaintiff is not contingent on the owner's contract payments, it is unnecessary for us to determine whether Aetna owes an independent or contingent duty to pay plaintiff under the payment bond" (*supra,* at 159).

Defendant National Union distinguishes this matter from *West-Fair* on the ground that the contract at bar does not "extinguish[ ] plaintiff subcontractor's ability to enforce a lien against the owner." The insurer asserts that the owner, as a disclosed principal, "remains directly liable to the Trade Contractors to pay for their work * * * In fact, the Trade Contract actually provides in Section 24.18 that the [subcontractors'] lien rights are protected, and specifies that they have lien rights against FC Bruckner's interest in the Project." The implication is that because the various contracts do not run afoul of the particular public policy considerations underlying the Court of Appeals decision in *West-Fair,* the pay-when-paid provisions contained in the subcontracts are to be given full effect. The basis of defendant insurer's position is the hypothesis that its liability is coextensive with that of the contractor, its disclosed principal. Therefore, defendant contends, if the pay-when-paid provisions contained in the various subcontracts do not offend public policy for the reasons stated by the Court of Appeals in *West-Fair,* defendant should not be held liable to the subcontractors under its payment bond.

An *amicus curiae* brief has been submitted in support of plaintiffs' appeal on behalf of the Subcontractors' Trade As-

sociation, the Niagara Frontier Subcontractors' Association and the American Subcontractors' Association. It contends that the insurer cannot evade its promise to the subcontractors under its payment bond by labeling the bond principal as the owner's agent for payment. It further contends that the provision of the general contract making the contractor an agent for payment and conditioning payment to the subcontractors on receipt of payment from the owner is void as against public policy.

There are two grounds under which the subcontractors can require the insurer to honor its bond. The first is the obligation created by the bond itself. In deciding *West-Fair* (*supra*), the Court of Appeals never addressed the nature of the insurer's obligation under its payment bond, that is, whether the insurer's promise is contingent on the contractor's default of its contractual obligations or independent of such default. If, as plaintiffs and *amici* assert, the insurer has made an independent promise, it is necessary to consider the second question certified by the Second Circuit Court of Appeals: "Whether a surety's liability is contingent on the duty of a contractor to make payment to a subcontractor when the surety bond created an independent obligation to that subcontractor" (87 NY2d, *supra*, at 153).

Defendant's payment bond contains an unqualified promise to make payment to any "claimant" that has "a direct contract with the contractor * * * to furnish labor, materials or equipment for use in the performance of the Contract." The bond recites: "The Contractor and surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns, to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference." This promise is subject to defeasance by certain conditions subsequent: "With respect to the Owner, this obligation shall be null and void if the Contractor * * * promptly makes payment, directly or indirectly, for all sums due claimants * * * and there is no Owner default. * * * With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due."

It is defendant's burden, as the party seeking to be relieved from its contractual obligation, to demonstrate that the requisite condition has arisen (*Lindenbaum v Royco Prop. Corp.*, 165 AD2d 254, 258; Calamari & Perillo, Contracts § 140, at 227-228). The contractor, York Hunter, has not made pay-

ment—either as the direct obligor or as agent on behalf of the owner—and F.C. Bruckner has not made payment to the contractor, which constitutes an "owner default" under the bond. Thus, a condition subsequent has not arisen to relieve the surety of its otherwise unqualified promise to pay the subcontractors "for labor, materials and equipment furnished for use in the performance of the Construction Contract".

Defendant insurer contends, disingenuously, that its payment obligation only extends to "undisputed amounts," as provided in paragraph 6 of the payment bond. It further argues that, irrespective of the language of its bond, its obligation as surety is defined by its contract with the owner and does not extend beyond "York Hunter's obligations to its own subcontractors, employees and suppliers as well as York Hunter's obligation to disburse monies received from FC Bruckner."

The first argument is a specious distortion of the contract language. The provision to which defendant refers concerns only the amount of payment immediately due to the claimant, not the contractual basis of the surety's obligation to pay. It states that, upon receiving proper notice of a claim under the bond, "the Surety shall * * * send an answer to the claimant * * * stating the amounts that are undisputed and the basis for challenging the amounts that are disputed."

The second argument misconstrues the unqualified nature of the surety's promise, subject to defeasance, to pay for services and materials furnished in connection with the construction contract. The subject instrument is not a performance bond that obligates the insurer to pay for any default in the performance of its contracts with plaintiffs, but a payment bond that imposes a significantly broader obligation. In any event, had the surety intended to make its obligation coextensive with that of the general contractor, it would have been a simple matter to add a phrase to qualify its obligation "to the extent that the contractor is obligated to pay for services and materials furnished in connection with the construction contract." Significantly, defendant does not contest either the direct contractual relationship between plaintiff subcontractors and York Hunter or the acquiescence of the owner and its agent to plaintiffs' performance of work in connection with an improvement upon the owner's real property (Lien Law § 3). The general rule is that "an agent for a disclosed principal 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal' " (*Savoy Record Co. v*

*Cardinal Export Corp.*, 15 NY2d 1, 4, quoting *Mencher v Weiss*, 306 NY 1, 4). The tenor of the unconditional promise contained in National Union's bond, subject to defeasance, reflects such an intent. However, to the extent the agent's liability might be contradicted by this general principle of agency, the resulting ambiguity will be resolved *contra proferentem*, against the insurer who drafted or presented it (*Taylor v United States Cas. Co.*, 269 NY 360, 364; *see also, Graff v Billet*, 64 NY2d 899, 902 [citing *151 W. Assocs. v Printsiples Fabric Corp.*, 61 NY2d 732, 734; *United States v Seckinger*, 397 US 203, 216]).

The second basis for enforcement of the payment bond is less a matter of public policy, as the *amicus* brief asserts, and more a function of basic contract law. Even if the payment bond were not an independent promise to pay on the part of defendant insurer, York Hunter would still be held liable to its subcontractors for the payments specified in the respective subcontracts, despite express language to the contrary in those agreements. In the attempt to distinguish the condition precedent to payment contained in the subcontracts from the pay-when-paid provision found to violate public policy in *West-Fair* (*supra*), the agreements postulate an agency capacity for York Hunter with respect to any payment due to plaintiffs under the subcontracts. The effect is to divorce the agreements from the consideration that renders them binding as a mutual obligation of the parties.

The customary contractual relationship between general contractor and the entities engaged to perform work on the owner's property obligates the subcontractor to perform the specified work and obligates the contractor to pay for work actually performed. The work and the payment are the mutual inducement for the obligation undertaken by each party. The respective subcontracts with York Hunter obligate the subcontractors to perform work at the contractor's direction; however, they place no corresponding obligation on the contractor to make payment, thus offending the requirement of mutual obligation (*Dorman v Cohen*, 66 AD2d 411, 415).

While the subcontracts recite that the "Trade Contractor shall be paid the 'Contract Price' ", that obligation is shifted to the owner, F.C. Bruckner, under the general contract and under the various subcontracts. F.C. Bruckner, however, is not a party to any contract with plaintiff subcontractors, and the agency relationship between York Hunter and the owner is a creation of the general contract between them. That the owner is ultimately responsible for making payment to the subcontrac-

tors under the Lien Law does not render the nature of that obligation contractual. If anything, the independent obligation imposed by operation of law defeats the relationship between the owner and plaintiffs (*Ripley v International Rys.*, 8 NY2d 430, 441 ["A covenant to do what one is already under a legal obligation to do is not sufficient consideration for another contract."]; *Strong v Sheffield*, 144 NY 392 [promise to do no more than one is contractually or legally obligated to do is illusory]; *see also, IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.*, 152 AD2d 451, 453).

If York Hunter is to function merely as the agent for the owner, an obligation imposed by the prime contract between owner and contractor, what is the consideration for the labor and materials provided by the subcontractor? The legal obligation imposed on the owner to compensate the subcontractors does not remedy the lack of a similar contractual obligation on the part of York Hunter; by absolving itself of any obligation to compensate its subcontractors, the contractor has rendered its promise to pay the contract price illusory. With respect to analysis under contract principles, it is immaterial that the subcontractors have a cause of action against the owner based upon the agency of the contractor (*Kelly Masonry Corp. v Presbyterian Hosp.*, 160 AD2d 192, 193). The lack of any duty to pay the subcontractors vitiates the consideration for the subcontractors' performance under their agreements with the contractor.

That is not to say that these contracts are unenforceable. It is settled that the courts will not adopt an interpretation that renders a contract illusory when it is clear that the parties intended to be bound thereby (*Wood v Duff-Gordon*, 222 NY 88; *Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259, 265-266). Either by contract or, failing an enforceable instrument, on the ground of unjust enrichment (*Bauman Assocs. v H & M Intl. Transp.*, 171 AD2d 479, 484), plaintiffs are entitled to seek payment from the contractor and, on the basis of unjust enrichment alone, from the owner. As the Court of Appeals noted in *West-Fair* (87 NY2d, *supra,* at 158), without discussion, "As a matter of contract law, the owner and the general contractor are liable to plaintiff for the work plaintiff has been authorized to perform, and performed, under the subcontract agreement."

Defendant surety's interpretation of the contracts between its principal and plaintiffs as well as its own obligations under the payment bond is without foundation. The dual roles of York Hunter as general contractor and as agent for payment

under its contracts with plaintiff subcontractors are inconsistent. York Hunter cannot act as contractor for the purpose of directing plaintiffs' work under the subcontracts and as agent for payment for the purpose of compensating plaintiffs' efforts under those agreements without destroying the mutuality of obligation required to sustain a bilateral contract (*see,* Calamari and Perillo, Contracts §§ 66, 67, at 130-131). In any event, the plain language of the payment bond creates an independent obligation to pay for labor and materials furnished in connection with the contract for the improvement of the owner's real property subject to defeasance only upon payment by the contractor.

■ Finally, if the designation of the contractor as the owner's "agent for payment" did not impair the contracts between York Hunter and the subcontractors, this Court would find that the designation offends public policy. Nothing in the Lien Law suggests that the creation of an interest in the real property improved by a subcontractor was intended to abrogate the responsibility of a contractor to compensate those it engages to perform the improvements. In any event, if the attempted contractual relationships were to be enforced, the result would violate public policy, as reflected in the Lien Law. If the primary obligation to compensate the subcontractor falls on the owner and the general contractor is merely the owner's agent for the purpose of making payment, the owner's default results in no amount due and owing to the general contractor. Any such payment the owner makes is intended for the subcontractor, the contractor being merely a conduit though which the payment passes. Thus, upon default, there is no indebtedness by the owner to the general contractor that would serve as the predicate for a mechanic's lien (Lien Law § 4 [1]; *DiVeronica Bros. v Basset*, 213 AD2d 936; *Dempsey v Mt. Sinai Hosp.*, 186 App Div 334, *affd* 227 NY 661), and the contractual arrangement violates public policy for the same reasons articulated in *West-Fair* (*supra*).

Accordingly, the order of the Supreme Court, Bronx County (Kenneth Thompson, Jr., J.), entered May 29, 1998, which granted defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s motion for summary judgment, denied plaintiffs' cross motion for summary judgment, and dismissed the complaint, should be reversed, on the law, without costs, the motion denied, the cross motion granted as to liability for work performed under the subcontracts and the matter remanded to Supreme Court for an assessment of the compen-

sation due to plaintiffs for extra work performed in connection with the construction contract. Appeal from order, same court and Justice, entered on or about December 14, 1998, which, denied the motion to renew, should be dismissed, without costs, as academic, in view of the foregoing.

Motion seeking leave to appear as *amici curiae* and for other related relief granted.

SULLIVAN, J. P., TOM, SAXE and BUCKLEY, JJ., concur.

Order, Supreme Court, Bronx County, entered May 29, 1998, reversed, on the law, without costs, defendant's motion for summary judgment dismissing the complaint denied, plaintiffs' cross motion granted as to liability for work performed under the subcontracts and the matter remanded to Supreme Court for an assessment of the compensation due to plaintiffs for extra work performed in connection with the construction contract. Appeal from order, same court, entered on or about December 14, 1998, dismissed, without costs, as academic, in view of the foregoing. Motion seeking leave to appear as *amici curiae* and for other related relief granted.