Ralph BONAVIST, as President of the Suburban New York Regional Council of Carpenters and Ralph Bonavist, Fred Dauber, William Bleckicki, Howard Jones, William Hamilton, Charles Fuchs, John Fuchs, Wayne Rogers, Patrick Morin, William Weitzman, William MacChione, Gerald Scaffetta, Robert Carlino, Joseph Ganiro, George Frank, Arthur Godsell, Paul O'Brien, Joseph Oliveri, Ross Pepe, Alfredo Rezende, as Trustees of the Suburban New York Regional Council of Carpenters Welfare, Pension, Vacation, Annuity, Apprentice Training and Charitable Trust Funds, Plaintiffs,

v.

INNER CITY CARPENTRY, INC., York Hunter Construction, Inc. and National Union Fire Insurance Company of Pittsburgh, PA., Defendants.

No. CV 00–4591(ADS)(MLO).

United States District Court,
E.D. New York.

Feb. 21, 2003.

Meyer, Suozzi, English & Klein, P.C., Mineola, NY (W. Matthew Groh, of Counsel), for the Plaintiffs.

Greene & Zinner, P.C., White Plains, NY (Stanley S. Zinner, of Counsel), for Defendant Inner City Carpentry, Inc.

Ross & Cohen, LLP, New York, NY (Andrew L. Richards, of Counsel), for Defendant York Hunter Construction, Inc.

Torre, Lentz, Gamell, Gary & Rittmaster, LLP, Jericho, NY (Shari Lee Sugarman, of Counsel), for Defendant National Union Fire Insurance Company of Pittsburgh, PA.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Plaintiffs, Trustees of the Suburban New York Regional Council of Carpenters Welfare, Pension, Vacation, Annuity, Apprentice Training and Charitable Trust Funds, and Ralph Bonavist, as President of the Suburban New York Regional Council of Carpenters (the "Union") (collectively, the "plaintiffs") commenced this action to recover unpaid wages and fringe benefits based on work performed for construction of residential housing. Presently before the Court is a motion for summary judgment by defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

## I. BACKGROUND

The following facts are undisputed unless otherwise indicated. On or about July 11, 1997, Avalon Properties, Inc. ("Avalon" or the "Owner") entered into a written agreement with defendant York Hunter Construction, Inc. ("York Hunter") to build residential housing in Mamaroneck, New York, known as Avalon Willow (the "Project"). As the construction manager of the Project, York Hunter entered into subcontract agreements with various subcontractors, including defendant Inner City Carpentry, Inc. ("Inner City") to perform specific tasks at the Project.

Section 5.06 of the subcontract with Inner City provides: "To the extent permitted by applicable law, a condition precedent to payment by Construction Manager to Trade Contractor is the receipt of funds by Construction Manager from Owner designated for payment to Trade Contractor. Trade Contractor acknowledges it is relying solely on the credit of Owner and not the credit of Construction Manager for payment for Work performed by Trade Contractor."

Inner City employed Union carpenters for the Project. According to the plaintiffs, while York Hunter was a party to a project labor agreement with the Union covering construction work on the Project, Inner City was a party to a collective bargaining agreement with the Union covering carpentry work on the Project.

As required under the contract for the construction of the Project, York Hunter obtained a labor and material payment bond ("Payment Bond") from National Union, which named Avalon as the obligee and York Hunter as the principal. The Payment Bond guaranteed that York Hunter would use the funds it received from Avalon as payment for work performed to pay York Hunter's subcontractors. The Payment Bond provided:

This Bond only covers claims of Subcontractors, Sub–Subcontractors, Suppliers, and Laborers to the extent the Contractor has been paid for the labor, services, or materials provided by such persons. This Bond does not preclude you from serving a notice to Owner or Filing a claim of lien on this Project.

1. The Contractor and Surety, jointly and severally, bind themselves ... to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2. With respect to the Owner, this obligation shall be null and void if the contractor:

a) promptly makes payment, directly or indirectly, for all sums due claimants which have been paid to Contractor by Owner, and

b) Defends indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided Owner has promptly notified the Contractor and the Surety of any claims, demands, liens or suits, and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, provided there is no Owner Default, and provided Owner has paid all sums due and owing to Contractor.

3. With respect to claimants, this obligation shall be null and void if the contractor promptly makes payment, directly or indirectly, for all sums properly due Claimants for which Contractor has received payment from Owner.

On August 7, 2000, the plaintiffs commenced this action against Inner City, York Hunter, and National Union seeking recovery of unpaid wages and fringe benefits contributions owed to the plaintiffs and to the individual carpenters represented by the Union in connection with work performed in the construction of the Project pursuant to the Employee Retirement Income Security Act and the Labor Management Relations Act, together with supplemental State law breach of contract claims. The plaintiffs claim that Inner City and York Hunter failed to comply with their obligations under their respective bargaining agreements. The complaint contains one claim for relief against National Union, which is a claim based upon the Payment Bond for unpaid wages and fringe benefits.

On August 19, 2002, National Union filed a motion for summary judgment on the grounds that it is not liable to the plaintiffs under the limitations of the Payment Bond outlined above. In opposing National Union's motion for summary judgment, the plaintiffs argue that, among other things, the "pay-when-paid" provision of the Payment Bond is ambiguous and unenforceable as void against public policy.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment under Fed.R.Civ.P. 56 should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotations and citations omitted); *see Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14 (1986); *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir. 1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there is are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at

this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## B. Pay–When–Paid Provision

National Union contends that the explicit terms of the Payment Bond provide that the surety's payment obligation arises only if York Hunter is paid by Avalon for a particular subcontractor's work and fails to make payment to that subcontractor. According to National Union, because York Hunter has paid to Inner City all sums received by it from Avalon on Inner City's behalf, National Union has no obligation to pay the plaintiffs. The Court disagrees.

The plaintiffs correctly assert that the "pay-when-paid" provision of the Payment Bond is unenforceable as void as against public policy. In *West–Fair Elec. Contrs. v. Aetna Cas. & Sur. Co.*, 87 N.Y.2d 148, 638 N.Y.S.2d 394, 661 N.E.2d 967 (1995), the owner of a construction project entered into a contract with a general contractor, who then entered into a subcontract with a subcontractor. The subcontract agreement contained a "pay-when-paid" provision which stated: "IT IS SPECIFICALLY UNDERSTOOD AND AGREED THAT THE PAYMENT TO THE [SUBCONTRACTOR] IS DEPENDENT, AS A CONDITION PRECEDENT, UPON THE CONSTRUCTION MANAGER [THE GENERAL CONTRACTOR] RECEIVING CONTRACT PAYMENTS ... FROM THE OWNER." 87 N.Y.2d at 153–154, 638 N.Y.S.2d 394, 661 N.E.2d 967. The general contractor obtained a payment bond

from the defendant surety. The payment bond provided that the general contractors and the surety were jointly and severally liable for payments for work performed.

After the owner became insolvent, the general contractor stopped making payments to the subcontractor. An action was commenced by the subcontractor against the general contractor and the surety. Relying on the pay-when-paid provision of the subcontract agreement, which limited the general contractor's liability to the funds the general contractor received from the owner, the defendant surety argued that because the owner had not made any further payments to the general contractor, the general contractor had no obligation to pay the subcontractor. The surety also asserted that its payment obligation under the payment bond was contingent on the general contractor's liability. According to the surety, because the general contractor had no obligation to pay the subcontractor, it owed no obligation to pay the subcontractor under the payment bond. The New York Court of Appeals rejected the surety's argument, holding that "a pay-when-paid provision which forces the subcontractors to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as contrary to public policy set forth in Lien Law § 34." 87 N.Y.2d at 158, 638 N.Y.S.2d 394, 661 N.E.2d 967.

In *West–Fair*, the court reasoned that under contract law, the owner and the general contractor are both liable to the subcontractors for the work that the subcontractors have been authorized to perform under the subcontract agreement. *Id.* However, a pay-when-paid provision as a condition precedent forced the subcontractor to defer payment for its work until payment is made by the owner to the general contractor. *Id.* Because the owner

was unable to make payments to the general contractor, the subcontractor's right to receive payment became indefinitely postponed or lost. The court explained that the plaintiff subcontractor effectively waived its right to enforce its mechanics liens by operation of the pay-when-paid provision, because mechanics' liens may not be enforced until a debt becomes due and payable. *Id.*

The court then ruled: "Consequently, the pay-when-paid provision here extinguishes plaintiff subcontractor's ability to enforce a lien against the owner. The pay-when-paid provision creates this result by preventing the subcontractor from establishing the existence of a present amount, due and unpaid, arising from the subcontractor's performance and owed by the general contractor. The establishment of such a debt is a necessary element of the subcontractor's cause of action to enforce its lien against the owner." 87 N.Y.2d at 159, 638 N.Y.S.2d 394, 661 N.E.2d 967. Thus, the "pay-when-paid" provision was held to be void and unenforceable as contrary to public policy.

Similarly, in *Blandford Land Clearing Corp. v. National Union Fire Insurance Co. of Pittsburgh, PA.*, 260 A.D.2d 86, 87–88, 698 N.Y.S.2d 237, 238–239 (1st Dep't 1999), which also involved National Union, as surety, and York Hunter, as general contractor, the defendant surety attempted to distinguish the ruling in *West–Fair* by arguing that the "pay-when-paid" provision in a subcontract agreement did not offend public policy on the ground that the subcontract did not extinguish the subcontractor's ability to enforce a lien against the owner. The subcontract in *Blandford* provided that the contractor was acting as an agent of the owner and a condition precedent to payment by the contractor to the subcontractor was the receipt of funds by the contractor from the owner. 260 A.D.2d at 88–89, 698 N.Y.S.2d 237.

In addition, the payment bond in *Blandford* stated: "The Contractor and surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns, to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated by referenced." 260 A.D.2d at 91, 698 N.Y.S.2d 237. This promise was subject to defeasance by certain conditions subsequent: "With respect to the Owner, this obligation shall be null and void if the Contractor ... promptly makes payment, directly or indirectly, for all sums due claimants ... and there is no Owner default.... With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due." *Id.*

In rejecting the defendant's argument, the court in *Blandford* held that making the surety's liability contingent on the duty of the contractor to make payment to a subcontractor, only after receipt of payment from the owner, offends public policy. The court determined that the defendant surety was liable under its payment bond because the general contractor, as the owner's agent, intended to substitute its personal liability for that of the owner and the defendant surety's unconditional payment bond reflected that intent. As the court explained: "If the primary obligation to compensate the subcontractor falls on the owner and the general contractor is merely the owner's agent for the purpose of making the payment, the owner's default results in no amount due and owing to the general contractor.... Thus, upon default, there is no indebtedness by the owner to the general contractor that would serve as the predicate for a mechanic's lien, and the contractual agreement

violates public policy for the reasons articulated in *West–Fair.*" 698 N.Y.S.2d at 244 (citations omitted).

The Court finds that the facts in *West–Fair* and *Blandford* are indistinguishable from the acts in the instant case. The payment bond in *Blandford* is nearly identical to the Payment Bond in this case. Here, the Payment Bond provides language which attempts to make National Union's liability coextensive with that of York Hunter only after receipt of payment from Avalon.

Furthermore, the Court agrees with the plaintiffs that the subcontract between York Hunter and Inner City attempts to limit York Hunter's obligation to make payment under its subcontract with Inner City, only after York Hunter's receives payment from Avalon. Accordingly, the Court finds that the "pay-when-paid" limitation in the Payment Bond, upon which National Union relies, is unenforceable as against public policy.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that National Union's motion for summary judgment is DENIED; and it is further

**ORDERED**, that the parties are directed to appear for a status conference on March 13, 2003 at 9:00 A.M., at the Long Island Federal Courthouse, 1024 Federal Plaza, Central Islip, New York 11722, in Courtroom 1020.

**SO ORDERED.**