OPINION OF THE ,COURT
Smith, J.
Two questions of law have been certified to us from the Second Circuit Court of Appeals (West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co., 49 F3d 48):
1. Whether a pay-when-paid provision in a subcontract, which transfers the risk of an owner’s default from a general contractor to a subcontractor, violates New York public policy as set forth in the Lien Law; and
2. Whether a surety’s liability is contingent on the duty of a contractor to make payment to a subcontractor when the surety bond created an independent obligation to that subcontractor.
We answer the first question in the affirmative and do not reach the second question.
This dispute among the parties arose in connection with a construction project in White Plains, New York. The owner of the construction project entered into a contract with defendant Gilbane Building Company, the general contractor, to build a development known as the Westchester Pavilion. The general contractor entered into various subcontract agreements with subcontractors, including West-Fair Electric Contractors and L.J. Coppola, Inc., to perform specified tasks on the construction project.
The general contractor also obtained a payment bond from defendant Aetna Casualty & Surety Company (Aetna) which named the general contractor as the principal, and the owner of the construction project as the obligee. The payment bond provided that upon the satisfaction of certain conditions (not applicable to the circumstances of this case):
"The above named Principal and Surety [Aetna] hereby jointly and severally agree with the Owner that every [subcontractor] claimant as herein defined who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant’s work or *154 labor was done or performed * * * may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.”
Plaintiff L.J. Coppola, Inc. substantially completed the mechanical and plumbing work specified in its subcontract with the general contractor by October 1993. Although the general contractor paid plaintiff with funds received from the owner through the end of October, the owner subsequently became insolvent and the general contractor did not make any further payments to plaintiff. Plaintiff commenced an action in Federal District Court against Aetna and against the general contractor, seeking the rest of the sums due under the subcontract.[1] Plaintiff’s complaint alleged that the general contractor owed a duty to pay under the subcontract and that the general contractor would be unjustly enriched unless plaintiff received the full subcontract price. Plaintiff sued Aetna pursuant to the payment bond.
Defendants moved for summary judgment, arguing that section 3.2 of the subcontract contained a pay-when-paid provision which limited the general contractor’s liability to the sums the general contractor received from the owner. Section 3.2 of the subcontract agreement provides in relevant part:
"it is specifically understood and agreed that THE PAYMENT TO THE TRADE CONTRACTOR [plaintiff] IS DEPENDENT, AS A CONDITION PRECEDENT, UPON THE construction manager [the general contractor] RECEIVING CONTRACT PAYMENTS, INCLUDING RETAINER FROM THE OWNER”.
Defendants claimed that because the owner had not made any further payments to the general contractor, the general contractor had no obligation to pay the subcontractor. Aetna argued that as a surety, its payment obligation under the bond was contingent on the general contractor’s liability. Since the general contractor had no obligation to pay plaintiff, Aetna maintained it also owed no obligation to plaintiff under the payment bond.
Plaintiff cross-moved for summary judgment and argued that the pay-when-paid provision merely fixed a time for payment, *155 rather than placing the risk of nonpayment by the owner on the subcontractor. Plaintiff further argued that the payment bond issued by Aetna unconditionally provided for payment to plaintiff after 90 days if the general contractor failed to pay plaintiff within that time.
The District Court granted plaintiff’s summary judgment motion and awarded plaintiff the sums due under the subcontract; defendants’ summary judgment motions were denied. The District Court reasoned that pay-when-paid provisions indefinitely suspended subcontractors’ enforcement rights under the Lien Law because the subcontractor could obtain payment only after the owner paid the general contractor. If the owner failed to pay the general contractor, payment to the subcontractor would never be due and the subcontractor would never be able to enforce its mechanics’ lien. The District Court voided the pay-when-paid provision as against the public policy of New York State and held that the provision operated as an improper waiver of plaintiff’s right to enforce its mechanics’ liens. The court also held Aetna liable under the payment bond because Aetna had assumed a direct obligation to plaintiff by the plain language of the bond.
Defendants appealed to the Second Circuit Court of Appeals which certified the questions before us. We accepted the certified questions for review (85 NY2d 890).
We reject plaintiff’s argument that the pay-when-paid provision in section 3.2 of the subcontract merely fixed a time for payment. A contract provision stating that payment will occur upon a stipulated event will be construed as a time for payment provision unless there is express language to the contrary in the contract (Schuler-Haas Elec. Co. v Aetna Cas. & Sur. Co., 40 NY2d 883, 885). In Schuler-Haas, we held that the pay-when-paid provision fixed a time for payment because the document containing the provision lacked express language imposing a condition on the general contractor’s legal responsibility to pay. In contrast, the face of the subcontract here explicitly makes payment from the owner to the general contractor a "condition precedent” to any payment to plaintiff. Since the unambiguous language of section 3.2 places the risk of the owner’s inability or failure to pay the general contractor squarely upon plaintiff, the pay-when-paid provision here cannot be construed as a time for payment clause. Because Schuler-Haas did not involve a pay-when-paid provision which required subcontractors to assume the risk that an owner would fail to pay the general contractor, we must now decide *156 whether the pay-when-paid provision here violates public policy as stated in the Lien Law.
Defendants argue that the District Court erred in divining the true nature of New York’s Lien Law. Defendants contend that a subcontractor’s right as a lienor is subrogated to that of the general contractor and that plaintiffs lien rights are measured and restricted by that of the general contractor. Consequently, defendants claim, the District Court improperly enlarged the liability of the general contractor by holding the general contractor liable to plaintiff when the general contractor could not recover from the owner. Defendants also argue that plaintiff has not been deprived of any Lien Law rights because plaintiff retained the ability to file and, in fact, filed a mechanics’ lien against the construction project property.
The Lien Law provides that article 2, which governs mechanics’ liens, "is to be construed liberally to secure the beneficial interests and purposes thereof’ (Lien Law § 23). The Lien Law also provides, "Notwithstanding the provisions of any other law, any contract, agreement or understanding whereby the right to file or enforce any lien created under article two is waived, shall be void as against public policy and wholly unenforceable”[2] (Lien Law § 34).
Senator James H. Donovan, a sponsor of the bill which the Legislature ultimately enacted as Lien Law § 34, described the impetus behind this legislation:
"Since the year 1897 the Legislature has recognized the need to afford protection to those who furnish work, labor and services or provide materials for the improvement of real property. Throughout the succeeding years changes in the law have been enacted to clarify, enlarge and perfect the right of those who improve real property to be paid. The Lien Law has been the sole vehicle through which such interests may gain a measure of protection * * *. It has become prevalent in the construction industry to require contractors, subcontractors, materialmen and laborers to sign contracts or *157 subcontracts containing clauses which waive the right of the signator to file or enforce his mechanic’s [sic] lien. This legal barrier is thus imposed long before any work is performed or materials furnished. The surrender of such protective rights as a prerequisite to obtaining a contract or subcontract is repugnant, against public policy and should be void” (Mem of Senator Donovan, L 1975, ch 74, 1975 NY Legis Ann, at 341).
It is evident from the foregoing that New York’s Lien Law is remedial in nature and intended to protect those who have directly expended labor and materials to improve real property at the direction of the owner or a general contractor.
A subcontractor may file a mechanics’ lien for the value or the agreed price of the labor or materials furnished at the request or consent of the owner’s contractor (Lien Law § 3). Lien Law § 4, which governs the scope of the liens which may be filed, states:
"If labor is performed for, or materials furnished to, a contractor or subcontractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon. In no case shall the owner be liable to pay by reason of all liens created pursuant to this article a sum greater than the value or agreed price of the labor and materials remaining unpaid, at the time of filing notices of such liens, except as hereinafter provided” (Lien Law § 4 [1]).
Subcontractors may enforce their mechanics’ liens against the property specified in the notice of lien and any person liable for the debt upon which the lien is founded (Lien Law §§ 24, 41). Consequently, the Lien Law grants the subcontractor an independent right, separate and apart from a general contractor’s remedies, to file and enforce a mechanics’ lien against a person liable for the debt upon which the lien is founded, such as the owner, and the real estate being improved. However, the owner’s liability to the subcontractor is limited to the unpaid portion of the value or agreed to price of the improvements at the time the lien is filed (see, Lien Law § 4 [1]). Thus, in the event the general contractor fails to pay a subcontractor with the sums the owner has already paid, the Lien Law *158 protects owners from paying more than the value of the improvements, or the contract price.
In accordance with the concern expressed by the Legislature that those who directly improve real property should be paid, the Lien Law favors subcontractors’ liens over those of the general contractors in the foreclosure of mechanics’ liens against real property. Upon the sale of property on which both subcontractors and general contractors have liens, Lien Law § 56 requires that the sales proceeds be paid to subcontractors ahead of general contractors. Thus, although the subcontractor’s recovery against the owner is limited by the balance due on the general contract, the subcontractor’s right to recover is not in subrogation to the general contractor’s rights.
We hold that a pay-when-paid provision which forces the subcontractor to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as contrary to public policy set forth in the Lien Law § 34. By contrast, a pay-when-paid provision which merely fixes a time for payment does not indefinitely suspend a subcontractor’s right to payment upon the failure of an owner to pay the general contractor, and does not violate public policy as stated in the Lien Law.
As a matter of contract law, the owner and the general contractor are liable to plaintiff for the work plaintiff has been authorized to perform, and performed, under the subcontract agreement. However, a pay-when-paid provision as a condition precedent requires plaintiff to defer payment for its work until the general contractor has been paid by the owner. As the owner here has become insolvent, the owner may never make another contract payment to the general contractor. Because the lack of future payments by the owner is virtually certain, plaintiff’s right to receive payment has been indefinitely postponed, and plaintiff has effectively waived its right to enforce its mechanics’ liens. The waiver has occurred by operation of the pay-when-paid provision because mechanics’ liens may not be enforced until a debt becomes due and payable (see, Matter of Schiavone Constr. Co. [Fischer & Porter Co.], 181 AD2d 580).
We reject defendants’ contention that plaintiff retains any meaningful rights under the Lien Law by virtue of plaintiff’s ability to file a mechanics’ lien against the improved property. The Lien Law distinguishes between the right to file and the right to enforce mechanics’ liens and prohibits any contract, agreement or understanding waiving either right (Lien Law *159 § 34). The Lien Law also provides that subcontractors may file and enforce their mechanics’ liens against the persons liable for the debt giving rise to the lien, in addition to rights in the real property (Lien Law §§ 24, 41). Plaintiff has waived its rights to enforce mechanics’ liens against the general contractor and the owner as persons liable for the sums due under the subcontract, because the debt is uncollectible and will remain uncollectible until the owner has paid the general contractor.
Consequently, the pay-when-paid provision here extinguishes plaintiff subcontractor’s ability to enforce a lien against the owner. The pay-when-paid provision creates this result by preventing the subcontractor from establishing the existence of a present amount, due and unpaid, arising from the subcontractor’s performance and owed by the general contractor. The establishment of such a debt is a necessary element of the subcontractor’s cause of action to enforce its lien against the owner (see, Schiavone, supra).
We do not find the reasoning or the results in the authorities cited by defendants persuasive. The Court in David Fanarof, Inc. v Dember Constr. Corp. (195 AD2d 346) does not appear to have considered whether the pay-when-paid provision at issue there operated as a waiver of rights in violation of Lien Law § 34. Moreover, the Fanarof Court relied on dicta from Schuler-Haas Elec. Corp. v Aetna Cas. & Sur. Co. (49 AD2d 60, affd 40 NY2d 883, supra), an Appellate Division writing involving a pay-when-paid provision which fixed a time for payment, a situation wholly different from the circumstances here (see, Fanarof, supra, at 346). Since this case involves the public policy of New York, we decline to consider the Maryland authorities cited by defendants, which interpret Maryland law (see, Gilbane Bldg. Co. v Brisk Waterproofing Co., 86 Md App 21, 585 A2d 248; Architectural Sys. v Gilbane Bldg. Co., 760 F Supp 79).
Having concluded that the general contractor’s liability to plaintiff is not contingent on the owner’s contract payments, it is unnecessary for us to determine whether Aetna owes an independent or contingent duty to pay plaintiff under the payment bond. Accordingly, certified question No. 1 should be answered in the affirmative, and we need not reach certified question No. 2.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the *160 questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question No. 1 answered in the affirmative, and certified question No. 2 not answered as academic.

. The District Court consolidated plaintiff’s action with a lawsuit brought by West-Fair Electric Contractors, another subcontractor on the same project. West-Fair subsequently settled with the general contractor and withdrew from the case. Coppola is the only remaining plaintiff in the Federal action.

. Section 34 also contains two exceptions to the general prohibition against waivers, neither of which is applicable here. A written waiver to file a mechanics’ lien is not void for public policy where the waiver is required in exchange for payment for labor performed or materials furnished, or, upon the subordination, release or satisfaction of a lien made after a notice of lien has been filed.