Digesare Mech., Inc. v U.W. Marx, Inc. (2019 NY Slip Op 07668)





Digesare Mech., Inc. v U.W. Marx, Inc.


2019 NY Slip Op 07668


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

527775

[*1]Digesare Mechanical, Inc., Appellant,
v
U.W. Marx, Inc., et al., Respondents.

Calendar Date: September 5, 2019

Before: Garry, P.J., Lynch, Mulvey and Devine, JJ.


Couch Dale Marshall PC, Latham (Mark W. Couch of counsel), for appellant.
Mastropietro Law Group, PLLC, Saratoga Springs (Nathan C. Woodward of counsel), for respondents.



Garry, P.J.
Appeal from an order of the Supreme Court (Fisher, J.), entered August 28, 2018 in Ulster County, which, among other things, granted defendants' cross motion for summary judgment dismissing the complaint against defendant U.W. Marx, Inc.
Defendant U.W. Marx, Inc. (hereinafter Marx) was the contractor to the Dormitory Authority of the State of New York (hereinafter DASNY) on a public improvement project for the construction of a residence hall. In 2013, Marx hired plaintiff as a subcontractor pursuant to a written agreement (hereinafter the subcontractor agreement). Defendant Liberty Mutual Insurance Company, the surety for the project, issued a labor and material payment bond pursuant to State Finance Law § 137. In April 2017, following the completion of the project, plaintiff commenced this breach of contract action alleging that Marx had not fully paid plaintiff for its work on the project (first three causes of action). Plaintiff further claimed payment from Liberty Mutual pursuant to the bond agreement (fourth cause of action). Marx joined issue alleging, among other things, that the unpaid funds were properly withheld as damages for delays and faulty workmanship. Liberty Mutual likewise joined issue and denied liability.
Plaintiff moved for summary judgment on its first, second and fourth causes of action, and defendants cross-moved for summary judgment dismissing the complaint against Marx. Supreme Court denied plaintiff's motion, finding that a triable issue of fact existed as to whether Marx had breached the contract, and granted defendants' cross motion for summary judgment dismissing the complaint against Marx on the ground that plaintiff's claims against Marx were time-barred by a six-month limitation period set forth in the subcontractor agreement. The court further searched the record and determined that plaintiff's claim against Liberty Mutual (fourth cause of action) was time-barred pursuant to the bond agreement and granted summary judgment to Liberty Mutual dismissing the complaint against it. Plaintiff appeals.
The parties to a contract are free to agree in writing to shorten the six-year limitations period for breach of contract so long as "the intent to do so is expressed in clear terms and the time period is reasonable" (Whitney Lane Holdings, LLC v Don Realty, LLC, 159 AD3d 1163, 1165 [2018]; see CPLR 201, 213; John J. Kassner & Co. v City of New York, 46 NY2d 544, 550-551 [1979]). Here, the subcontractor agreement provided that "[a]ny claim by [plaintiff] against [Marx] must be filed . . . within six (6) months after [plaintiff's] last day of work on the [p]roject site." Marx established in defendants' cross motion for summary judgment that plaintiff's last day of work on the project was October 13, 2015, and that plaintiff commenced this action more than six months later, in April 2017. In finding the action to be time-barred, Supreme Court rejected plaintiff's contention that the shortened limitation period was unreasonable, noting that courts have previously found comparable six-month limitation periods to be enforceable (see e.g. Dart Mech. Corp. v City of New York, 121 AD3d 452, 452 [2014]; Top Quality Wood Work Corp. v City of New York, 191 AD2d 264, 264 [1993]). However, whether a shortened contractual limitation period is "fair and reasonable [depends upon] . . . the circumstances of each particular case. . . . The circumstances, not the time, must be the determining factor" (Executive Plaza, LLC v Peerless Ins. Co., 22 NY3d 511, 519 [2014] [internal quotation marks and citation omitted]). Under the circumstances presented here, we find that the six-month limitation period was unreasonable, and therefore reverse the dismissal of the complaint against Marx.
The subcontractor agreement provided for plaintiff to receive monthly progress payments while work on the project was ongoing, less a specified percentage withheld as retainage, to be paid within seven days after Marx received payment from DASNY. Plaintiff was entitled to final payment of the entire unpaid balance following completion of the project and upon Marx's receipt of payment from DASNY. Plaintiff established that it submitted a total of 20 invoices to Marx for its work on the project; Marx paid plaintiff for the first 15 of these invoices, but neither paid the amounts claimed in the final five invoices nor gave plaintiff written notice of disapproval of any of the invoices as required by the subcontractor agreement.[FN1] In addition, plaintiff submitted pleadings from a separate litigation commenced by Marx against DASNY and the project architect. In that action, Marx had asserted that its work had been delayed by design defects and other errors and omissions on the part of DASNY and the project architect, and that DASNY had failed to make full payment to Marx for its work. DASNY counterclaimed against Marx for delay damages. Plaintiff submitted evidence revealing that this litigation was settled in February 2018, and that Marx received a settlement payment from DASNY thereafter. Plaintiff asserts that this settlement amount constituted DASNY's final payment to Marx within the meaning of the subcontractor agreement. Therefore, plaintiff argues that Marx's contractual obligation to make final payment to plaintiff was not triggered, and plaintiff's cause of action for breach of contract did not accrue until the settlement was paid in 2018 — long after the six-month contractual limitation period expired in 2016.
Although there is nothing inherently unreasonable about the contractual six-month limitation period, "an otherwise reasonable limitation period may be rendered unreasonable by an inappropriate accrual date" (Executive Plaza, LLC v Peerless Ins. Co., 22 NY3d at 519). The enforceability of a contractual accrual date depends upon "whether the plaintiff had a reasonable opportunity to commence its action within the period of limitation" (id. [internal quotation marks and citation omitted]). Here, plaintiff had no such opportunity, because the timing of its payment was subject to a condition — Marx's receipt of payment from DASNY — that plaintiff could not control and that did not occur before the limitation period expired (see D & S Restoration, Inc. v Wenger Constr. Co., Inc., 160 AD3d 924, 926 [2018]). Had plaintiff attempted to commence an action within the six-month period, the action would have been subject to dismissal as premature, as plaintiff's claim had not yet accrued. Marx's argument that plaintiff could have timely commenced its action within six months after the submission of its sixteenth invoice — the first invoice that Marx did not pay — is without merit, as Marx neither claimed nor showed that it had received payment from DASNY for plaintiff's work within that time period, so that the claim would then have been due and payable.
"A 'limitation period' that expires before suit can be brought is not really a limitation period at all, but simply a nullification of the claim" (Executive Plaza, LLC v Peerless Ins. Co., 22 NY3d at 518; accord D & S Restoration, Inc. v Wenger Constr. Co., Inc., 160 AD3d at 926). The conflict in the subcontractor agreement between the limitation period and the payment provisions had the effect of nullifying plaintiff's breach of contract claim; thus, the six-month limitation period is unreasonable and unenforceable, and Supreme Court should not have dismissed plaintiff's complaint as time-barred (see Executive Plaza, LLC v Peerless Ins. Co., 22 NY3d at 518-519; AWI Sec. & Investigations, Inc. v Whitestone Constr. Corp., 164 AD3d 43, 47-49 [2018]; D & S Restoration, Inc. v Wenger Constr. Co., Inc., 160 AD3d at 926; Baluk v New York Cent. Mut. Fire Ins. Co., 126 AD3d 1426, 1427-1428 [2015]).
We reject Marx's argument that DASNY's settlement payment was made to settle litigation and therefore should not be considered the final payment for purposes of determining plaintiff's entitlement to final payment by Marx under the subcontractor agreement. Marx commenced the litigation against DASNY to collect the unpaid balance it was allegedly owed, and it has neither claimed nor shown that DASNY made a payment that should be considered final payment to Marx on any other date. We further find no merit in Marx's argument that the subcontractor agreement's requirement for payment to plaintiff upon its receipt of payment from DASNY is an impermissible "pay when paid" provision. Contract provisions that make an owner's payment to the general contractor a condition precedent to payment by the general contractor payment to the subcontractor — thus shifting the risk of the owner's failure to pay from the general contractor to the subcontractor — are "void and unenforceable as contrary to public policy" (West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co., 87 NY2d 148, 158 [1995]). In contrast, a contract provision like the one here, simply providing that payment will occur upon a specified event, is construed as a scheduling provision that does not alter the subcontractor's underlying substantive right to payment and, thus, does not violate public policy (see id.; Schuler-Haas Elec. Co. v Aetna Cas. & Sur. Co., 40 NY2d 883, 885 [1976]).[FN2]
We next find that plaintiff's motion for summary judgment on the first cause of action in its complaint, alleging breach of contract against Marx, should have been granted. Plaintiff's submissions satisfied the obligation of establishing a prima facie case by demonstrating that Marx agreed, pursuant to the subcontract agreement, to pay a certain sum for plaintiff's work, that plaintiff performed the work called for in the contract, addressed necessary changes through approved change orders that increased the total sum due and submitted invoices to Marx, and that Marx failed to pay the sums requested in the last five invoices, leaving an unpaid balance due (see Carroll v Rondout Yacht Basin, Inc., 162 AD3d 1150, 1151 [2018], appeal and lv dismissed 32 NY3d 1035 [2018]; Hyman v Schwartz, 127 AD3d 1281, 1283 [2015]). Plaintiff submitted documentation including, among other things, the subcontractor agreement, approved change orders, the invoices and a list indicating which invoices were paid and in what amounts. These submissions established on a prima facie basis that plaintiff was entitled to judgment as a matter of law, shifting "the burden to plaintiff to 'produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact'" (Convenient Med. Care v Medical Bus. Assoc., 291 AD2d 617, 618 [2002], quoting Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; see George S. May Intl. Co. v Thirsty Moose, Inc., 19 AD3d 721, 722 [2005]).
In an attempt to meet this burden, Marx submitted emails exchanged with plaintiff during the project which, according to Marx, placed plaintiff on notice that backcharges or delay damages would be assessed against it. Although some of these emails included general warnings that delay damages or backcharges could be assessed against plaintiff in the future for certain issues that arose during construction, none of the messages actually assessed such charges, nor specified their amounts. Most of the emails contain conditional warnings such as "[plaintiff] will be backcharged if [DASNY] charge[s] [Marx]" or "if [certain work is not completed] . . . overtime will be charged to plaintiff" (emphasis added), with no indication as to whether the conditions occurred or charges were actually imposed thereafter.[FN3] None of the emails refer to plaintiff's invoices, and the dates of the emails — between January 2015 and June 2015 — cover periods in which the record reveals that the corresponding invoices were paid without objection or deductions other than the standard retainage.
Marx submitted no other evidence that it ever communicated disapproval of the sums sought in plaintiff's invoices, advised plaintiff that any specific amounts would be withheld from its payments, or assessed damages or backcharges against plaintiff through some other mechanism. Plaintiff's vice-president averred that he was the person to whom delay damages or backcharges would have been addressed, and that no such charges were ever issued. Significantly, Marx's submission in reply neither mentioned nor denied the vice-president's claim.[FN4]
As for Marx's assertion that plaintiff was partially responsible for delay damages assessed by DASNY against Marx, Marx's only supporting submission is an affidavit from its vice-president averring that he advised plaintiff that it would be held responsible for its "portion" of these damages. However, nothing in that affidavit or elsewhere in Marx's submissions indicates what share of these damages it believes should be attributed to plaintiff rather than to other subcontractors or to Marx itself, nor is there any indication that Marx ever advised plaintiff of any such specific amount. More significantly, Marx did not claim that it actually paid delay damages to DASNY, nor did it submit evidence that it made any claims against plaintiff in the DASNY litigation or that any reduction representing delay damages was included in the litigation settlement.
Thus, Marx submitted nothing more in opposition to plaintiff's summary judgment motion than general assertions that plaintiff was aware that it could be held liable to Marx for unspecified amounts of backcharges and damages, with no showing that the contract's written notice provisions were complied with, no specific claims as to the amounts of such charges and no showing that such charges were actually assessed. Marx's belated claims constitute mere "generalized, vague assertions" that do not suffice to meet its burden to establish the existence of a triable issue of fact (Kingsley Arms, Inc. v Sano Rubin Constr. Co., Inc., 16 AD3d 813, 815 [2005]; see George S. May Intl. Co. v Thirsty Moose, Inc., 19 AD3d at 722; Jovee Contr. Corp. v AIA Envtl. Corp., 283 AD2d 398, 400 [2001]). Accordingly, plaintiff's motion for summary judgment on its first cause of action should have been granted.
As for plaintiff's claim against Liberty Mutual, Supreme Court has the authority to search the record and grant summary judgment to a nonmoving party (see CPLR 3212 [b]; Matter of Shambo, 138 AD3d 1215, 1216 [2016]). Here, the court made a determination that the action was time-barred by the bond agreement, which provided that "[n]o suit or action shall be commenced hereunder by any claimant . . . [a]fter the expiration of one (1) year following the date on which [Marx] ceased work
. . .[;] however, if any limitation embodied in this bond is prohibited by any law controlling the construction hereof[,] such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law." Giving effect to the first part of this provision, the court found that the contractual limitation period expired before plaintiff's action was commenced in August 2017 — either one year after August 2016, when Marx substantially completed the project or, at the latest, one year after October 2016, when plaintiff completed its work.
However, State Finance Law § 137 (4) (b) sets forth a later accrual date than the payment bond, providing that "no action on a payment bond furnished pursuant to [State Finance Law § 137] shall be commenced after the expiration of one year from the date on which the public improvement has been completed and accepted by the public owner" (emphasis added). The provisions of State Finance Law § 137 govern bonds furnished pursuant to that statute, and, although parties may agree to expand the statute's protections, they may not limit them (see A.C. Legnetto Constr. v Hartford Fire Ins. Co., 92 NY2d 275, 278-279 [1998]; American Bldg. Contrs. Assoc., Inc. v Mica & Wood Creations, LLC, 23 AD3d 322, 323 [2005]). As the accrual date set forth in the first part of the contractual limitation provision conflicts with State Finance Law § 137 (4) (b), the second part of the provision must be given effect, and the bond agreement must be deemed to be amended to provide for the accrual date set forth in the statute (see generally Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]). The record does not reveal the date on which the project was accepted by DASNY for this purpose. Accordingly, there are issues of fact as to when plaintiff's cause of action against Liberty Mutual accrued and whether it is time-barred, and summary judgment dismissing the complaint against Liberty should not have been granted (see American Bldg. Contrs. Assoc., Inc. v Mica & Wood Creations, LLC, 23 AD3d at 323; Swing Staging v Hartford Fire Ins. Co., 269 AD2d 193, 194 [2000]). Thus, plaintiff's fourth cause of action asserting claims against Liberty Mutual under the bond must be reinstated. For the same reasons, plaintiff did not establish the timeliness of its claim against Liberty Mutual as a matter of law, and its motion for summary judgment on that claim was properly denied (see Allied Envtl. Group, Inc. v Samson Constr. Co. Inc., 36 AD3d 521, 522 [2007]).
Lynch, Mulvey and Devine, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied plaintiff's motion for summary judgment on the first cause of action, (2) granted defendants' cross motion dismissing the complaint against defendant U.W. Marx, Inc. and (3) granted summary judgment dismissing the fourth cause of action against defendant Liberty Mutual Insurance Company; plaintiff's motion granted to said extent and summary judgment awarded to plaintiff on the first cause of action, defendants' cross motion denied and fourth cause of action reinstated; and, as so modified, affirmed.



Footnotes

Footnote 1: The subcontractor agreement provides that, "[u]pon the partial or entire disapproval by [Marx] of [plaintiff's] application for payment, [Marx] shall provide written notice to [plaintiff]. When the basis for the disapproval has been remedied, [plaintiff] shall be paid the amounts withheld."

Footnote 2: For this reason, Marx's argument that its settlement payment from DASNY did not constitute payment in full because the settlement amount was less than the sum that Marx had originally sought is without merit. As the subcontractor agreement did not impose the risk that DASNY might not make full payment upon plaintiff, Marx's agreement to accept a reduced amount in settlement of the litigation did not alter its obligation to make payment to plaintiff for its work.

Footnote 3: One email, dated in June 2015, does state with specificity that "12 man-hours" would be billed back to plaintiff's account for certain work, but there is no indication as to the actual amount of money in question, whether it was in fact billed back and whether that charge remained unpaid. The record reveals that plaintiff's invoice for that time period was paid without objection.

Footnote 4: Contrary to Marx's argument, the fact that the copies of plaintiff's invoices in the record carry no indication that they were approved by Marx does not establish that Marx disapproved them. Plaintiff submitted the invoices in the record, and asserted without contradiction that these invoices were copied before they were submitted to Marx and, thus, before they could have been approved or certified. Notably, no signatures or certifications by Marx appear on any of the invoices in the record, including the first 15 invoices that were paid by Marx without objection.