## Olek, Inc. v Merrick Real Estate Group Inc.

2025 NY Slip Op 31827(U)

May 19, 2025

Supreme Court, New York County

Docket Number: Index No. 652181/2017

Judge: Lori S. Sattler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   **HON. LORI S. SATTLER**                      **PART**      **02**

*Justice*

-------------------------------------------------------------------------------X

OLEK, INC.,

                                 Plaintiff,

                      - v -

MERRICK REAL ESTATE GROUP INC.,12 E 72ND LLC

                          Defendant.

-------------------------------------------------------------------------------X

**INDEX NO.**        652181/2017

**DECISION AFTER TRIAL**

Plaintiff Olek, Inc. ("Olek") commenced this action seeking recovery for breach of contract and foreclosure on a mechanic's lien by filing a Summons and Complaint on April 24, 2017.  Defendants Merrick Real Estate Group ("Merrick") and 12 E 72nd LLC ("12 E 72nd") (collectively "Defendants") filed an Answer on June 19, 2017 in which they interposed counterclaims for breach of contract and willful exaggeration of a mechanic's lien.  The action was transferred to this Court for trial on March 6, 2024.  In a Decision and Order dated August 2, 2024, the Court rescheduled the trial of this action to October 15-18, 2024 (NYSCEF Doc. No. 232).  Thereafter, the Court conducted settlement and pretrial conferences.

On the date of the trial, Merrick's principal, Richard Pesce ("Pesce"), did not appear. Through counsel, Pesce claimed that he needed to assist his daughter in Florida due to Hurricane Milton and that he could not attend the trial for "a couple of weeks" (October 15, 2024 Trial Transcript at 2-4).  The Court denied the request of his attorney, also the attorney for Merrick's co-defendant 12 E 72nd, for an extension as he provided no valid excuse for his default given the longstanding date for this trial, his ability to return to New York as Florida airports were no longer closed at the time, and the age of this case.   Merrick's counsel conceded that "Mr. Pesce

[* 1]

was a fact witness, but I think I can make out my claim with Mr. Croman as well" (October 15 Trial Transcript at 13).

A three-day bench trial was held on October 15-17, 2024. At the conclusion of Defendants' case, the Court dismissed the counterclaims for breach of contract and willful exaggeration of the mechanic's lien for the reasons set forth on the record, namely that Defendants did not demonstrate a breach or an exaggeration of the mechanic's lien because they set forth no proof other than the testimony of the owner as to what their damages were or that there was a willful exaggeration (October 17 Transcript at 18-19).

Two witnesses were called during the trial: Peter Triestman ("Triestman"), Olek's president and sole shareholder, and Steven Croman ("Croman"), a principal of 12 E 72nd, which is the owner of the townhome located at 12-14 East 72nd Street ("the townhome"). Olek called Triestman, who testified about the nature of Olek's business, stating that it fabricates and restores parts for historic buildings, including at Grand Central Station, the United Nations, and New Jersey Transit Penn Station (October 15 Transcript at 20-21). They have performed work on the Upper East Side of Manhattan on other occasions (*id.*).

12 E 72nd retained Merrick as construction manager for work on the townhome (Plaintiff's Exhibit 32, "Construction Management Agreement"). Merrick then retained Olek for work on the townhome pursuant to a subcontract signed on October 15, 2014 (Plaintiff's Exhibit 0, "Subcontract"). Olek was hired to fabricate the townhome's front courtyard grills, window grills, some railings, and three doors, including the double door main entrance to the townhome (*id.* 21-22). Merrick issued six change orders to Olek during the job (Plaintiff Ex. 2-6). 12 E 72nd was not a party to the Subcontract or change orders. Olek was initially owed $122,000 under the Subcontract, which increased with additional work performed under the change orders.

652181/2017   OLEK, INC. vs. MERRICK REAL ESTATE GROUP INC.                    Page 2 of 9
   Motion No.  008

2 of 9

[* 2]

The change orders expanded the scope of the job to include things such as a pergola structure for the roof and hinges for the doors that were fabricated amongst other things. A one-year door warranty was prepared by Triestman on August 8, 2016 and issued to Merrick (October 15 Transcript at 38-39; Plaintiff's Ex. 21).

Trietsman credibly testified that Olek was not paid in full (October 15 Transcript at 41). He stated that Olek had difficulty receiving payment after the initial seven or eight payments (*id*. 33). Olek submitted a summary all 14 requests for payments, which showed a balance of $81,534.48 owing as of October 21, 2016 (Plaintiff's Ex. 23). This calculation included 2% monthly "finance charges" on overdue balances, as provided by Section 10 of the Subcontract. Olek filed a mechanic's lien against the townhome on November 25, 2016 (Plaintiff's Ex. 26). Olek also submitted requisition orders to Merrick, which they called "applications for payment" (Plaintiff's Ex. 7-20). Triestman testified, and the requisitions confirm, that different portions of the Subcontract required payment of a 10% deposit, 30% upon approval of shop drawings, 40% upon completion of fabrication and the last 20% upon installation (October 15 Transcript at 31; Plaintiff's Ex. 7-20).

Triestman testified as to the work Olek performed and addressed some of the concerns about the work raised by Croman, the principal of 12 E 72nd. The Court credits Triestman's testimony. He stated that, at the time Olek completed the work, all the townhome's doors were functioning properly (October 15 Transcript at 41). He further states that Olek installed weatherstripping on the doors in August 2016 (*id*. at 74-75). Prior to that time, he stated that it was Defendants who did not want weatherstripping, because they wanted to use the doors as a construction entrance (*id*. at 40). Triestman testified that the work was performed in conformity to the plans which had been signed off on with comments from Merrick's architects (*id*. at 41).

**652181/2017   OLEK, INC. vs. MERRICK REAL ESTATE GROUP INC.**                     **Page 3 of 9**
  **Motion No.  008**

3 of 9

[* 3]

He stated that Merrick provided the electric "strike" for the townhome's double front doors (*id*. at 46). Olek prepared the shop drawings which were ultimately marked "final" by Merrick (Plaintiff Ex. 22). Triestman further testified that Olek completed all the work called for by the Subcontract and change orders by September 2016 (October 15 Transcript at 31).

On cross-examination, Triestman addressed some of 12 E 72nd's complaints about the work. At the time of completion, Olek had not received any complaints about water penetration through the doors (*id*. at 57-58). He testified that, although Olek installed the door strike that purportedly wore out after two years, it had been provided by Merrick and was functional at the time of completion and credibly opined that the strike was not heavy duty (*id*. at 63). Triestman claimed that he only received complaints about the doors "years later" but found no evidence of them bowing after he inspected them (*id*. at 64). He claims that any complaints received about the trellis were fixed "right away" (*id*. at 69). Complaints about the doors latching properly were completed in August 2016 when the weatherstripping and the fit of the lock were adjusted (*id*. at 74). However, Triestman testified that he only learned about an alleged pipe burst in the townhome caused by cold air infiltrating through the doors into the vestibule in March 2018, after this action was commenced (*id*. at 70). He testified that he examined the doors at that time and observed that they were not bowed, warped, or otherwise defective (*id*. at 95-96). He further stated that, during this visit, he noticed that the doors were latching (*id*. at 96), that the weather stripping had been replaced by someone else (*id*. at 86-88), and that the strike was worn out (*id*. at 96).

Olek also introduced portions of the deposition transcript of Merrick's principal, Pesce (October 16 Transcript at 2). Pesce acknowledged that the weather stripping had been changed in the winter of 2017 by his own employee. When asked if Merrick had sustained monetary

652181/2017   OLEK, INC. vs. MERRICK REAL ESTATE GROUP INC.                Page 4 of 9
  Motion No.  008

4 of 9

[* 4]

damages due to Olek's alleged faulty work, he indicated that it had not and was not asserting a counterclaim (*id*. at 4). Pesce further testified that the owner of the townhome, 12 E 72nd, owed money to various subcontractors and would be responsible for any unpaid moneys owed to Olek for its work on the townhome (*id*. at 5-6). He acknowledged that Merrick was the construction manager for the project as confirmed in the contract between Merrick and 12 E 72nd (October 16 Transcript at 6-7; Plaintiff Ex. 32).

Defendants called Croman as their only witness and presented no documentary evidence to the Court. Croman stated that the townhome was "showcase" quality (October 16 Transcript at 26). He testified that he was familiar with Olek but claimed that Merrick had retained Olek for the work and had negotiated its Subcontract (*id*. at 27). Much of Croman's testimony centered on his complaints about the work performed by Olek, such as: cold air going through the front doors which he claims "fly open all the time," rust on a railing, and that he thought the pergola "didn't look good" (*id*. at 28-31). Croman claims he made non-stop requests for Olek to repair the putative defects (*id*. at 31). However, he also testified that, despite his many complaints, he has not changed any of Olek's work in the past eight years (*id*. at 35-36). Other than Croman's testimony, Olek presented no videos or photos to document his complaints or presented any bills or documentary evidence or any expert testimony as to his damages.

There was no evidence presented at trial that disputed the validity of the Subcontract between Olek and Merrick, an issue which had previously been raised in motion practice. For this reason, and as stated on the record, the Court dismissed Olek's quantum meruit claim against Merrick at the close of trial (October 17 Transcript at 33). As to Olek's quantum meriut claim against 12 E 72nd, the law is clear with respect to such a claim in the absence of a question of the validity of the Subcontract: generally, parties may not recover in quantum meruit if they have a

652181/2017   OLEK, INC. vs. MERRICK REAL ESTATE GROUP INC.
Motion No.  008

Page 5 of 9

[* 5]

valid, enforceable contract that governs the same subject matter as the quantum meruit claim (*see Clark-Fitzpatrick, Inc. v Long Island R. Co.*, 70 NY2d 382 [1987]; *Ellis v Abbey & Ellis*, 294 AD2d 168 [1st Dept. 2002]; *Cooper, Bamundo, Hecht & Longworth, LLP v Kuczinski*, 14 AD3d 644 [2d Dept. 2005]). Quasi-contract claims against non-contracting parties such as 12 E 72nd are precluded where there is a valid and enforceable contract governing the same subject matter (*see Feigen v Advance Capital Mgt. Corp.*, 150 AD2d 281, 283 [1st Dept. 1989]). Consequently. Olek cannot maintain its quantum meruit claim against 12 E 72nd, as its subcontract with Merrick is valid, enforceable, and governs the same subject matter. Olek's quantum meruit cause of action is therefore dismissed as against 12 E 72nd.

12 E 72nd argues that Olek cannot recover against it under its breach of contract cause of action as there was no privity between them. A subcontractor hired by a construction manager is not in privity of contract with a property owner (*Superb Gen. Contr. Co. v City of New York*, 70 AD3d 517, 518 [1st Dept 2010]). Here, the Subcontract and all of the change orders were between Olek and Merrick only. Olek is therefore not in privity with 12 E 72nd Street and cannot recover against it under the breach of contract cause of action.

Olek can, however, recover against Merrick under the Subcontract. The evidence adduced at trial shows that $81,534.48 was owed under the Subcontract as of October 31, 2016 and that no payment were made to Olek since that date. The Subcontract further provides that overdue balances were to accrue finance charges of 2% per month and that Olek is entitled to the "legal costs of collection" (Subcontract § 10). Accordingly, Olek is entitled to a judgment in its favor against Merrick in the amount of $81,534.48 plus interest from October 31, 2016, and this matter will be set down for a hearing on attorneys' fees owed under the Subcontract.

**652181/2017   OLEK, INC. vs. MERRICK REAL ESTATE GROUP INC.**     **Page 6 of 9**
  **Motion No.  008**

[* 6]

6 of 9

Olek also seeks to foreclose under its mechanic's lien against 12 E 72nd. The parties dispute whether Merrick was a construction manager or general contractor for purposes of the mechanic's lien and each offered testimony about the nature of Merrick and 12 E 72nd's relationship. Defendants argue that Olek cannot foreclose on its mechanic's lien against 12 E 72nd because Merrick was the general contractor responsible for paying the subcontractors on the project and that it was paid in full by 12 E 72nd under their agreement (October 17 Transcript at 30-31). Defendants further argue that Olek failed to establish how much money, if any, 12 E 72nd owed Merrick under their agreement (*id*. at 22). Olek argues that Merrick was merely a construction manager and that the fact that it was fully compensated by 12 E 72nd is not relevant (*id.* at 31). Olek maintains that Merrick was merely paying it and the other contractors with the owner, 12 E 72nd's, money that it was separately forwarded for this purpose, and that this was therefore "not the classic General Contractor situation" (*id*. at 32-33, quoting Construction Management Agreement § 9.6).

It is well-established that a subcontractor may enforce a mechanic's lien against an owner with whom it is not in privity if the subcontractor "provides a basis for its claim against the owner for trust violations under article 3-A of the Lien Law" (*Rebar Lathing Corp. Century Maxim Construction Corp*, 104 AD3d 406 [1st Dept 2013], citing Lien Law § 71[3][a]). A subcontractor can foreclose on its mechanic's lien against an owner where the owner has not fully paid the general contractor; such outstanding payments are the statutory trust funds to which the lien can attach (*see M & V Concrete Contr. Corp. v Modica*, 76 AD3d 614, 616 [2d Dept 2010]). However, a subcontractor cannot recover from an owner who has fully paid the general contractor, as there are no statutory trust funds remaining in that case (*see West-Fair Elec. Contrs. v Aeta Cas. & Sur. Co.*, 87 NY2d 148, 157-158 [1995] ["in the event the general

652181/2017   OLEK, INC. vs. MERRICK REAL ESTATE GROUP INC.
Motion No. 008

Page 7 of 9

[* 7]

contractor fails to pay a subcontractor with the sums the owner has already paid, the Lien Law protects owners from paying more than the value of the improvements, or the contract price"]).

The distinction between a general contractor and construction manager is significant in this case because it is determinative as to the source of statutory trust funds to which Olek seeks to attach its mechanic's lien. If Merrick is a general contractor in the "classic sense" encompassed by the Lien Law's definition of "contractor" (*see* Lien Law § 2[9]), then the moneys paid to Merrick by 12 E 72nd are the statutory trust funds and Olek cannot recover against 12 E 72nd if Merrick was paid in full. On the other hand, if Merrick's responsibilities were limited to those of a construction manager, then there remains a statutory trust consisting of the payments not made to Olek and its mechanic's lien can attach to these funds. When determining whether a party is a "contractor" as defined by Lien Law § 2(9), the Court not only looks at the terms used by the parties but at all of the facts of their relationship (*see Burns Electric Co. v. Walton St. Assoc.*, 136 AD2d 291, 295 [4th Dept 1988]).

The Court finds that Defendants' assertion that Merrick was the general contractor is not supported by the record. Although the Subcontract refers to Merrick as the "general contractor," this is not dispositive. Merrick was designated as construction manager in its agreement with 12 E 72nd (*see generally* Construction Management Agreement) and both Pesce, in his deposition, and Croman, in his trial testimony, referred to Merrick as the construction manager (October 16 Transcript at 25). The Construction Management Agreement provided that Merrick was to pay contractors such as Olek out of amounts paid to it by 12 E 72nd "on account of such Contractor's portion of the Work . . ." (Construction Management Agreement § 9.6). In his deposition, Pesce testified that any unpaid funds to Olek would be owed by the owner, 12 E 72nd (October 16 Transcript at 6). When discussing payments to Olek other subcontractors, Croman testified that

652181/2017   OLEK, INC. vs. MERRICK REAL ESTATE GROUP INC.                    Page 8 of 9
  Motion No.  008

[* 8]                                                                                8 of 9

their requisitions "would have to be approved by the construction manager [Merrick] who we hired for their expertise" and, if approved, the subcontractor requisitions "would be submitted to our [12 E 72nd] bookkeeper, our accounting office, and given to me to sign" (*id*. at 43-44). Croman further testified that he had personally signed one check paid to Olek (*id*. at 45).

The weight of the evidence in the record and adduced at trial indicates that Merrick was not acting as a general contractor for the work on the townhome but was rather the construction manager. The outstanding payments owed to Olek are therefore attachable lien funds and Olek is entitled to foreclose on its mechanic's lien against 12 E 72nd.

Accordingly, it is hereby:

ORDERED AND ADJUDGED that Olek, Inc. has a good, valid and enforceable mechanic's lien upon the premises located at 12-14 East 72nd Street, New York, New York Block No. 1386, Lot No. 62, in the amount of $81,534.48 with interest from October 31, 2016; and it is further

ORDERED AND ADJUDGED that plaintiff Olek, Inc. is granted a money judgment and against defendants Merrick Real Estate Group and 12 E 72nd LLC in the amount of $81,534.48 with prejudgment interest of 2 percent per month from October 31, 2016, and post judgment interest of 9 percent, and it is further

ORDERED that a hearing shall be held as to attorneys' fees owed by defendant Merrick Real Estate Group to plaintiff Olek, Inc. on September 17, 2025 at 9:30 a.m., in person at 60 Centre Street, Room 212.

| 5/19/2025 | | | | |
|---|---|---|---|---|
| **DATE** | | | **LORI S. SATTLER, J.S.C.** | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | DENIED | GRANTED IN PART | X OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |